Overton, J.
 

 delivered the following opinion of the Court: —
 

 In the argument of this case, it has been insisted by the counsel for the plaintiff in error,
 

 1. That the breaches took place in the lifetime of the ancestor, whereby the right of action accrued to the executor, and not to the heirs of the decedent.
 

 %■
 
 That the declaration does not state the nature of the title by which the defendants were evicted.
 

 3. That the Court below erred in not giving the instructions asked as to the measure of damages.
 

 4. That Talbot had no notice of the ejectment, and that therefore the verdict and judgment ought not to affect him.
 

 The third point having pressed itself upon the mind, and being the most extensive in its influence on society, will be first considered; and
 

 1. A construction of this covenant will be attempted, with a view to the principles of the common law.
 

 
 *342
 
 2. With a view to the existing mode of redress on such a contract, and the consequences of the disuse of the ancient modes in relation to the general law of contracts.
 

 The language of the covenant is that the plaintiff binds himself, his heirs, &c. to “ warrant and forever defend.” This is precisely the same phraseology employed in the common law general warranty. It was a covenant running with the land. In many cases it differed from a personal covenant, or covenant in gross, which will be particularly noticed in the discussion of the second position assumed by the plaintiff’s counsel. The benefits resulting from the covenant descended to the heir of the warran-tee. In case of the warrantee’s being sued, his remedy was by voucher; and when that remedy did not apply, by
 
 warrantia charta.
 
 In either case a recovery was made, not in money, but in land of equal value. A claim to real estate is considered by Blackstone and other writers, in the compound view of a right of property, a right of possession, and possession itself. A warranty was an assurance that all these, particularly the first, was in the grantor. This is the means by which the other two were attained and preserved. Title was an important object of the contract; as by furnishing this, the warrantee was at all times able to defend himself .when impleaded. Hence, agreeably to the terms of the contract, the war-rantor being obliged to defend, must be vouched whenever the warrantee was sued. He received, notice of the institution of the suit, by which he was required to come into court and defend the title in the place of the warrantee, agreeably to • his engagement. If the title of the warrantor thus made defendant, proved defective, the warrantee could then recover the value in other lands ; which value was not to be estimated at the time of the eviction, but at the time the warranty was made.
 

 By title here, is meant such a one as would bar the plaintiff of a recovery. If the action were , possessory, a superior possessory title would be sufficient; but if droitural, the warrantor must show one superior to the plaintiff’s, so as to preserve the possession of the terre-tenant or warrantee.
 

 A complete assurance of the perpetual enjoyment of the land being the object of a warrantee in fee, it followed as a necessary inference that if the warrantor had not a complete title at the time of the warranty, his contract' was broken in a material part, as soon as made.
 
 [1]
 
 This is demonstrated by the warrantee having it in his power to bring a suit on the warranty before being sued himself; and none can have voucher or
 
 viarrantia charta
 
 but the terre-tenant. He may have
 
 warrantia charta quia timet implaci-tari,
 
 but no execution shall be awarded; or in other words, no recovery in value shall be made until eviction in due course of law. This judgment
 
 *343
 
 as it is termed
 
 pro loco el tempore,
 
 bound the warrantor’s lands, which was the principal object.
 

 Thus it appears that the warrantee or terre-tenant was not obliged to wait until he was sued, before he could commence suit; which, in many instances, if it were otherwise, would have proved ruinous. For the purpose of bringing suit, the contract was considered as broken at the time it was entered into; because the warrantor had not an indefeasible title.
 

 It is not necessary to inquire minutely into the distinctions between a covenant of warranty affecting the realty, and covenants in gross, or personal covenants. In England the ancient warranty, or such a one as that now before the Court, has fallen into desuetude for nearly two hundred years, and covenants in gross substituted in its place; such as are mentioned in Sugden, 295. . With the introduction of these covenants, the ancient modes of proceeding by voucher and
 
 warrantia charta
 
 have ceased, and the common action of covenant has taken its place.
 

 By some the ancient warranty has been compared with and esteemed equivalent to a modern covenant for quiet enjoyment.
 

 This seems to be an imperfect view of the subject; the warranty at the common law, went farther than a bare covenant of quiet enjoyment; it extended to the title, which is not primarily contemplated by the other, — that relates to the possession alone.
 

 It is more analogous to a covenant of seisin of an indefeasible estate. As it respects modern covenants, it is inclusive of a covenant of seisin of an indefeasible estate, and a right to sell; and as to the mode of redress, of quiet enjoyment.
 

 But as covenants in gross cannot be extended by equitable construction, each must depend upon the words used.
 
 [1]
 
 Thus, agreeably to the English law, a covenant of seisin simply, and a covenant of seisin of an indefeasible estate, convey different ideas.
 

 In the first case the covenantor may be seised of an estate, and yet not have an indefeasible estate. So as to quiet enjoyment, the covenantor may not be seised of an estate by title, and if the covenantee enjoys without disturbance, the covenant is not broken.
 

 2. It is important to consider the existing mode of redress and its consequences. It is agreed on all hands that those used anciently were by voucher and
 
 warrantia charta,
 
 and are now no longer in use. Even on the common law warranty as this is, an action of covenant must be brought. 2 Mass. Bep. 438; N. Car. Law. Repos. 81. It is further admitted that instead of the recovery in value of land, as was contemplated at common law, the recovery must be now had in damages ; and thus we are led to consider this contract on the broad foundation of contracts in general.
 

 
 *344
 
 Contracts divide themselves into those which are executed and those which are executory.
 
 [1]
 
 Mr. Sugden in his valuable treatise on vendors and purchasers, has made no distinction in principle, between real and personal contracts. It is believed that the law of contracts is the law of reason ; nor can any ground of distinction be perceived, as it respects the measure of damages, between those which relate to land and those which relate to personal property. Agreeably to ancient practice, damages on a breach of contract was left very much to the discretion of juries ; but in the gradual improvement of the science of law, particularly as relates to this subject, that which was formerly left in a state of uncertainty, is now reduced to settled and permanent principles.
 

 As to damages arising from torts, they must, from necessity, remain in a state of uncertainty in a great measure. Not so respecting the quantum of damages to be recovered upon the breach of a contract.
 

 As a rule of justice it may be safely stated that in all cases of contract for the delivery or conveyance of property, either real or personal, or for services to be performed, where the contract is unattended with fraud, deceit, indulgence, or delay, on the part of the obligor, and where the sum to be paid or duty to be performed, is specific and known to the obligor, and the contract either fails, or there’ is simply a delay of execution, the value of the property or services to be performed at the time of the execution, or intended execution of the contract, with interest thereon, should be the measure of damages ; and this must be considered the rule of law by those who have made the modern cases their study. An agreement respects something done, or to be done; in other words, executed or executory. As defined by Plowden,
 
 agregatio mentium in re aliqua facta vel facienda.
 
 Formerly interest was only allowed as a compensation for delay in payment of money. This rule has gradually been extending itself to contracts for property, estimating the value of the property in money at the time the contract should have been performed, allowing interest thereon until the time of the judgment. 2 Hay. Rep. 334, 336; 3 Call, 95; Hardin, 31; 3 Call, 300 ; 2 Burr. 1171. I am aware that most of these authorities do not contemplate interest on the value of property; but it is surely most conformable to that certainty in which the law delights, as well as to the nature of interest, agreeably to the modern books. It is intended as a recompense for the delay in performing some duty, the certainty of which is known to the obligor; but if the demand be unliquidated or uncertain, interest cannot be allowed. On the ground of reason and some of the authorities, it is not material whether the duty to be performed is in money or property. The same injury arises from a non-compliance; and why should not the same measure of compensation be applied where the obligor knows what he has to do ?
 

 
 *345
 
 Whenever agreements will admit of it, we have perceived a laudable disposition in the courts of justice to substitute certainty for uncertainty, in relation to compensation for the non-execution of contracts. Ordinary interest as such, or in the form of damages, seems to have been wisely adopted as the principle of this substitution. It nearly concerns a civilized and commercial people that individuals should know the result of failing to comply with contracts honestly made. The law presumes that all contracts are
 
 bona fide,
 
 nor will it presume the reverse.
 
 [1]
 
 It is on this presumption of law, as well as on the spirit of the statute of 1786, that the above general rule with respect to the measure of damages is founded. Whenever it appears that dishonest or fraudulent practices or conduct, in the formation or execution of a contract, has taken place, a different rule must apply. When a man who has contracted to deliver or convey property, or to perform services, fails to do so, the law will presume that the person with whom the contract was made would have derived a benefit from the performance of such contract equivalent to the interest of the money which represents its value. Reasoning like this is peculiarly applicable to this country where, owing to the newness of the settlement, titles are perplexed and unsettled. The most conscientious man may believe he has a good title to land, to which a better one is afterwards discovered. To make the vendor pay for the increased value or improvements of land, under such circumstances, would not only be repugnant to the genius of the common law, but such an intolerable burden that but few discreet persons would be willing to incur such a measure of justice. We should not only depart from the common law, in paying cash instead of land, which is much more easily obtained, but pay much more than that law contemplated.
 

 Why should there be any difference as to the measure of damages on non-compliance, between a contract for real and personal property ? In the •first case, a person when selling must expressly stipulate as to the goodness of the title; if he does not the law presumes the buyer took all risks on himself; but different, in this respect, is the sale of personal property, the vendor impliedly warrants the title. This difference only relates to the manner in which an obligation arises. When the subject-matter of the contract fails in either case, the measure of damages is the same; if an executed contract, the consideration money and interest; if executory, which contemplates some future act to be done, then the value of the property at the time the contract contemplated an execution of the agreement, with interest.
 

 In all cases respecting either real or personal property, the language of the Court of Appeals of Kentucky may be adopted. “ It is conceived that the value of any personal property on the day it is bargained to be delivered, together with legal interest thereon, is the most equitable general
 
 *346
 
 rule by which to ascertain damages when there is a failure of compliance. Indeed, when the property is of a perishable nature, or is wanted for immediate use or market, no other just rule can be discovered. Hardin’s Rep. 31. Perishable or not, money is the only medium in which an injury of this sort is estimated. Every species of property is capable of alienation for money; and the more easy and less encumbered such alien-ations are, the better for society. In this view, it is material that vendors and purchasers should know the consequences or amount of compensation for failing to comply with contracts honestly made, and with a
 
 bona fide
 
 intention. In the case before the Court the contract has failed, but no fraud or other peculiar circumstances appear. The measure of compensation ought to be the value of the land when the deed was executed, together with interest on that sum until a judgment is recovered.
 

 We will incidentally remark that cases may occur where only a part of the land is lost. The just rule then would, be to take the whole tract at what it cost, with interest, and calculating it in parcels, according to the particular value of each parcel, and in proportion to the cost and interest of the whole. In this tnanner the particular value of the part lost may be ascertained. The part lost might be of much greater or less value, on account of quality, water, &c., than the part held, and consequently to estimate dam.ages simply according to the number of acres in proportion to the purchase-money, would be to lose sight of justice.
 
 5
 
 Johns. Rep. 49.
 

 The contract under consideration, as to the title, is certainly an executed one ; it is an assurance of an indefeasible title, and, although the time of ascertaining whether such title existed or not was deferred until eviction, it would relate to the time of the execution of the contract. Since, as to the mode of redress, warranty is now considered as a personal covenant, and, consequently, a right to sue not confined to the terre-tenant, it is not necessary that a right of recovery should depend on an eviction in due course of law. The principal object of the contract being an assurance of title, if that did not exist at the time of making the warranty, any person entitled to its benefit, as the heir or assignee, may bring an action of covenant immediately, or at any time after such warranty is made; recover a judgment, and have execution as in other cases. To stop after obtaining a judgment and defer satisfaction until the bargainee has been regularly evicted, as the law was formerly understood, will oppose the existing anal-ogles of the law of contracts and of property, leave the warrantee liable to loss, if not ruin, by the insolvency of the warrantor, and produce injurious restraints on the alienation of real property, by the lien of judgments.
 

 It may not, however, be improper to remark that it would be just that the warrantee should surrender the possession before he brings a suit, and equity would probably restrain him from collecting the amount of his judgment until he had done so.
 

 
 *347
 
 And if the warrantor acquires a good title subsequent to the warranty, and before a suit is brought for a breach, perhaps he may make it available; hut we do not decide this point. 4 Cranch, 421; 4 Dal. 4SG ; 4 Johns. Rep. 1.
 

 In relation to interest, see the Act of 1786, ch. 4, § 5; 1 Hay. Rep. 142 ; 1 P. Wms. 895 ; 1 Atk. 4; 1 Johns. Rep. 315 ; 6 Johns. Rep. 45; 2 Johns. Rep. 280 ; 2 Hay.- Rep. 17 ; 4 Dal. 289 ; 3 Hen. & Mun. 448, 548. And as to damages, 1 Johns. Rep. 223; Add. Rep. 23; 4 Johns. Rep. 125 ; 1 Bay, 105, 357; 5 Mass. Rep. 437 ; 4 Amer. Law Jour. 147 ; 4 Mass. Rep. 109; 2 Mass. Rep. 455 ; 1 Mass. Rep. 125 ; Sugd. 312, 373, 327, 157.
 

 From this examination it appears that the County Coui’t erred in refusing to charge the jury as requested.
 

 The fourth exception taken by the plaintiff’s counsel, that the plaintiff did not receive notice of the action so as to enable him to defend it is not tenable. When the remedy on a warranty changed, many of the consequences of the ancient modes of proceeding changed with it. In every case of covenant to indemnify, the obligee, if sued, may or may not give notice to the obligor to come in and defend the suit. If lie does, the obli-gor is barred by the verdict; but if notice be not given the obligor may contest the former verdict in an action brought against him.
 

 Nor can the second exception of the plaintiff’s counsel be supported. The declaration is well enough; it is as broad and minute as the covenant, and that is all the law requires. There was no necessity to set out the nature of Donnelson’s paramount title.
 

 The first exception is that the breach took place in the lifetime of the ancestor, whereby the right of action accrued to the executors, and not to the heirs, of the deceased.
 

 Though the mode of redress and medium of compensation on a warranty is changed, the rights of the parties are not thereby altered. This part of the subject not having been much spoken to at the bar, some doubt existed.; but upon further consideration, it appears to us clearly that the impression of the Court was correct, and that the action is proper in the name of the heirs. Had the ancestor brought an action on the covenant; his personal representatives would have been entitled to the benefit'. As this was not the case, the warranty descended to the heirs as at common law; they are entitled to the benefit of it, and consequently to a compensation for a breach. The authorities referred to by the plaintiff’s counsel relate to covenants in gross, and not to covenants of warranty as understood at the common law.
 

 But upon the third point made by the plaintiff, as to the measure of damages, the judgment of the County Court must be reversed.
 

 [1]
 

 Obiginal Note. — 22 Vin. Abr. 419-421, 427.
 

 [1]
 

 Original Note. —3 Bur. 1639; 4 Am. Law J. 157.
 

 [1]
 

 Original Note. — Bul. N. P. 132; Bur. 1202; 1 Plow. 1S2.
 

 [1]
 

 Original Note. — 7 Johns. B. 605; 3 Johns. B. 281; 1 Johns. B. 521.